JULIA HOOPER v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 9, 1900.

Nos. 12,055—(188).

### Railway—Failure to Give Customary Signal—Negligence.

The movement of an engine and train, without giving the customary signals of warning, such as ringing the bell or blowing the whistle, constitutes negligence sufficient to establish liability against a railroad company, when such omitted signals were the cause of injury.

### Reliance of Fellow Servant upon Signal.

It is not negligence for a servant working in a hazardous place to rely and act upon the supposition that his fellow servants, who should give customary warnings of danger, will do so, and not neglect or omit their duties in that respect.

### Verdict Sustained by Evidence.

*Held*, upon the evidence in this case, that the failure of an engineer to give the proper and customary signals of danger made an issue for the

[1] Reported in 83 N. W. 440.

jury, and that their verdict in behalf of plaintiff is supported by the evidence.

Action in the district court for McLeod county by plaintiff, as administratrix of the estate of William H. Hooper, deceased, to recover $5,000 on account of his death. The case was tried before Cadwell, J., and a jury, which rendered a verdict in favor of plaintiff in the amount demanded. From an order denying a motion for a new trial, defendant appealed. Affirmed.

W. E. Dodge, for appellant.

F. D. Larrabee and C. G. Odquist, for respondent.

LOVELY, J.

This action is brought by plaintiff, as administratrix, to recover for the alleged negligence of defendant in causing the death of her husband. The plaintiff's intestate, William H. Hooper, was an employee of defendant, serving as brakeman on one of its freight trains running through Eagle Bend, a small station on its line of road, where the accident which caused his death occurred October 24, 1898. Plaintiff had a verdict. Defendant, after a motion for a new trial, which was denied, attacks the sufficiency of the evidence to sustain the finding of the jury upon two grounds: (1) That there is no evidence of defendant's negligence; (2) that the evidence establishes the contributory negligence of plaintiff's intestate.

In disposing of this appeal, the well-established rule must be adopted that we are to accept the most favorable inferences in support of the verdict which the evidence will authorize, and it is now the acknowledged doctrine of this court that the plaintiff's intestate is entitled, in the consideration of his conduct at the time of the accident, to every fair and reasonable justification in its favor that is possible under the circumstances. Hendrickson v. Great Northern Ry. Co., 49 Minn. 245, 51 N. W. 1044; Struck v. Chicago, M. & St. P. Ry. Co., 58 Minn. 298, 59 N. W. 1022.

Defendant's freight train on which Hooper was engaged as brakeman arrived at Eagle Bend about six o'clock in the evening. It consisted of an engine and twenty-six cars. There was an engineer and a fireman on the engine; there was a full complement of trainmen. Hooper was the middle brakeman, and as such it was his

80 M.—26

duty to couple and uncouple cars to be set out at way stations. At Eagle Bend there was a main and a side track, ascending to the north on a heavy grade, between forty-five and fifty feet to the mile. The train stopped as usual at the station, where it became necessary to detach the eighteenth car in order to place it upon the side track. This was to be accomplished by making a cut between the eighteenth and nineteenth cars, then pulling the forward portion of the train over a switch, and backing it down upon the side track, where the car was to be left. It was the particular duty of Hooper in this case to make the cut-off.

When the train had stopped, in order to uncouple the car to be set out, he, at the proper time, went between the cars to be uncoupled, intending, without doubt, to pull the pin, as was proper, from the nineteenth car, which was loaded with machinery, but for some cause he pulled the pin from the car ahead. After doing this, he stepped from between the cars, and signaled to the engineer to go ahead. This signal was received and acted upon by the engineer, who succeeded in pulling the forward portion of the train so far ahead that there was a space between the eighteenth and nineteenth cars of not more than fifteen feet, when the train became stalled, and could not be moved, the slack having been taken up in the forward section of the train. The engineer, for the purpose of obtaining momentum, and thereby to get a fresh start, moved the forward section slowly back, using steam, until the bumper on the eighteenth car struck Hooper, who was at the time in front of the corresponding bumper on the machinery car, whereby he received such injuries that he died immediately thereafter.

When the signal had been given by Hooper in obedience to which the engineer pulled the train ahead, he had stepped back upon the track, and attempted to remove the coupling pin from the forward end of the machinery car, where it had become fastened, and fixed in the coupler, and was not for that reason easily removed. There is no doubt from the evidence but that the forward section of the train actually stopped when it first moved ahead (though probably only for a moment) before it was started back by the engineer, and it was during the short space of time between the signal given by Hooper and the return of the forward part of the train that Hooper,

who in the meantime was at work in his endeavor to remove the pin from the coupler, received the injuries from which he died. When the forward portion of the train struck Hooper, he was, without doubt, standing between the bumper facing the machinery car, and at work on the pin. Whether he was there longer than the instant when he was struck does not appear from any evidence in the case, and, under the presumptions due him, it may be accepted as a fact that it was only during such instant preceding the accident.

The substantive ground on which recovery is demanded is that no warning of any kind was given of the backward movement of the front section of the train; it is claimed that Hooper had a right to rely upon the giving of such warning, and that for the failure of the defendant's engineer in this respect the plaintiff is entitled to damages for the death of her husband. There was testimony reasonably tending to show that, under circumstances similar to those occurring at the time when Hooper was killed, it was customary and usual for railroad engineers to give warnings, either by bell or whistle. One witness, properly qualified to testify, stated that all movements of an engine and train in a yard are customarily accompanied by the ringing of a bell; while the engineer of the train admitted that where a train was stalled, and it became necessary to move it slowly backward to control the slack, the whistle should be sounded, but that he did not consider it necessary to give that warning in this case. The customary signals being shown, it would without doubt be a question for the jury to determine whether a due regard for the safety of other servants working about the train required the strict observance of this rule, or permitted it to be dispensed with by a servant on whom the duty was imposed in this particular instance. The testimony to establish a custom in the respect stated was adequate for that purpose, and there was evidence to justify the jury in finding that no warning, either by bell or whistle, was given before the train backed down upon the plaintiff's husband, and crushed him between the bumpers.

It is sound reason, founded upon common experience, as well as a sensible rule of law, that an employee who is required by his master to work in a place of danger, when he cannot, in view of his constant attention to his own duties, observe the conduct of other

servants, need not anticipate or act upon the supposition that the latter will negligently disobey the rules and obligations of the service upon which the safety of others depends. Whether it be inferred that Hooper knew the train had stopped when it first went forward, or supposed it to be still moving ahead when he was caught and crushed, is not certain. Either view is consistent with the verdict; for upon the evidence the jury might have found that Hooper had a right to rely upon the engineer to give proper and customary signals for his protection and safety, and the verdict for the administratrix has determined that question in her favor.

Whether plaintiff's intestate was at fault and by his own negligence contributed to the accident was a question for the jury. It is true that at the time Hooper was struck he must have been standing in front of the bumper. Counsel for defendant urges that if he had stepped to one side he would have been in a place of safety. While it is probable that he would not have been injured in that case, yet the evidence that justifies a finding of negligence against the defendant also reasonably tends to relieve the plaintiff's intestate from the negligence imputed to him in that respect; for even if he knew that the train had stopped but a short distance ahead of him, or had he supposed that it was still moving forward, he might, under the finding of the jury, have reasonably supposed that dangerous movements of the train would not have been made without the usual signal that would give him warning of impending danger, and it is not to be presumed that Hooper stood in front of the bumper any length of time. It is reasonably inferable that he was working the pin out of the hole by pushing and pulling it from different positions, and that the train gradually and silently backed up, and caught him at an instant when he happened to be directly in front of it. We have no doubt that upon this element of the case the jury were justified by the evidence in their conclusion that Hooper was in the exercise of ordinary care at the time of his death, and upon this issue the action of the jury concludes further discussion.

The order appealed from is affirmed.