HENRY VOGT v. GEORGE T. HONSTAIN.[1]

August 7, 1900.

Nos. 12,157—(240).

### Injury to Servant—Promise of Master to Remedy Defect.

Where the master conducting an enterprise of hazard promises an employee to remedy a defect in the instrumentalities he furnishes, or to discharge an incompetent servant, the employee receiving such promise may wait in reliance thereon a reasonable length of time for the fulfilment of the same, where the danger is not imminent; and the promisee does not thereby assume the risk of injury resulting therefrom.

### Same—Negligence of Fellow Servant.

The rule stated above does not extend to a promise made by the master that the fellow servants of the employee to whom the promise is made will not be guilty of sporadic or occasional acts of negligence on their part, so as to bind the master in such cases.

[1] Reported in 83 N. W. 533.

Liability of Master.

> In such cases the liability of the master depends upon his failure or neglect to perform some personal obligation or duty that he owes as such master to the servant, which is imposed by the general duties of the relation between them.

Action in the district court for Ramsey county to recover $2,600 for personal injuries. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Morton Barrows*, for appellant.

There is no evidence of defendant's negligence sufficient to support the verdict. The injury resulted from the act, not necessarily negligent, of a fellow servant. The promise of defendant did not relieve plaintiff of the assumption of risk. This is not an ordinary promise to repair a defect or to afford physical protection in the nature of a guard. A promise to remedy is available by the servant to remove his assumption of risk only when there exists a continuing condition or dereliction by the master and a possibility of remedy. The proposition is necessarily limited to cases where the danger is definite and attributable to a definite and tangible cause. The converse is equally true: When a master has taken ordinary care to furnish a reasonably safe place, tools and appliances, and competent co-workmen in sufficient number, an assurance of safety by the master does not relieve the servant of the assumption of risk incident to the work and known and appreciated by him. If a danger is imminent and is known and appreciated by the servant, a promise of remedy by the master will not avoid the assumption of risk. Sweeney v. Berlin, 101 N. Y. 520; Marsh v. Chickering, 101 N. Y. 396; Meador v. Lake Shore, 138 Ind. 290; Gowen v. Harley, 12 U. S. App. 574. In absence of incompetence or habitual carelessness, no duty rests on the master to guard against individual and sporadic acts of negligence on the part of his servants, and a promise so to do does not relieve the servant of the assumption of risk. Gowen v. Harley, supra; Marsh v. Chickering, supra; Meador v. Lake Shore, supra; Corcoran v. Milwaukee, 81 Wis. 191. The gist

of this action is negligence. To relieve the servant from the assumption of risk it must further appear that the promise was relied on by the servant and that the promise contemplated some further action by the master to decrease the danger complained of. Showalter v. Fairbanks, 88 Wis. 376; Fairbank v. Haentzsche, 73 Ill. 236; Schlacker v. Ashland, 89 Mich. 253; Rothenberger v. N. W. Con. Mill. Co., 57 Minn. 461; Lyberg v. Northern Pac. R. Co., 39 Minn. 15; Illinois v. Mann, 170 Ill. 200; Counsell v. Hall, 145 Mass. 468; Smith v. Tromanhauser, 63 Minn. 98.

*Allen & Straight,* for respondent.

A servant is relieved from being held to have assumed the risks of his employment where the master has induced him to continue in the employment by a promise to remedy the condition or defect creating the danger, unless the danger is so imminent and immediate that an ordinarily prudent man would refuse to continue until the dangerous condition or defect be removed or remedied. Smith v. E. W. Backus Lumber Co., 64 Minn. 447; Harris v. Hewitt, 64 Minn. 54; Schlitz v. Pabst Brewing Co., 57 Minn. 303; Greene v. Minneapolis & St. L. Ry. Co., 31 Minn. 248; Rothenberger v. N. W. Con. Mill. Co., 57 Minn. 461; Lyberg v. Northern Pac. R. Co., 39 Minn. 15; Ehmcke v. Porter, 45 Minn. 338; Gibson v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 55 Minn. 177; Daley v. Schaaf, 28 Hun, 314; Chicago v. Sobkowiak, 148 Ill. 573; Hough v. Railway Co., 100 U. S. 213; 1 Shearman & R. Neg. (5th Ed.) § 215.

LOVELY, J.

Action for injuries sustained by plaintiff while in the employ of defendant, for the alleged negligence of the latter. Plaintiff had a verdict. Defendant moved for judgment or a new trial in the alternative, which was refused, and defendant appeals.

Defendant was engaged in building a grain elevator, which was constructed in the ordinary manner,—planks varying in length were laid upon each other, and spiked together, as the structure rose in height. The interior of the elevator was divided by partition walls into compartments or cribs. The exterior and division walls were carried up at the same time, the general level being preserved. The carpenters at work upon the building were required to cut the

planks and to fit and fasten them in their proper places so that all joints should be broken. In this particular case the planks and material used on the building were carried to the top of the elevator by a steam hoist on an arm or crane, which was extended from the top over the side, and equipped with appropriate appliances. Plaintiff and another workman were required to place the lumber used on the ground in piles below the hoist, and make it fast to the apparatus to be sent up as required by the carpenters above. This duty required the plaintiff to work very close to the building. The face of the elevator had to be cleared of obstructions for a space of at least forty feet wide, and no guard or barrier thereon could be interposed to protect the men working on the ground from danger by reason of falling material. There were about seventy-five men at work on the top of the elevator, which, at the time of the injury, had been carried about sixty feet above the ground. Several times previous to the accident pieces of lumber had fallen from the top of the elevator. On one occasion a plank with protruding spikes fell in dangerous proximity to the plaintiff. He became frightened on account of the apparent danger, and complained to the superintendent in charge of the work, saying to him:

"This never will go. We can't work here if you don't—they don't do any different than this."

The superintendent, after asking him if it (referring to the plank) came over the top of the building, received a reply that it did. The superintendent then called to the foreman in charge of the men on the top of the elevator, and said,

"This won't do; we must protect these men down here" (referring to the plaintiff and his fellow workman on the ground). The foreman answered, saying: "All right, I'll see that nothing will be going over there after this any more." The superintendent then turned to the respondent, and said: "Now you fellows go ahead, and you are safe there. That's all right. * * * I will see that you fellows are protected there now. There won't be another thing come over there after this."

Plaintiff returned to his work, relying, as he claims, upon the assurances of the superintendent, and for a time nothing fell from the elevator. Two days after, when kneeling on the ground at his

work, a piece of plank about five feet long fell upon and seriously injured his foot.

It does not appear by whom the plank was allowed to fall, but we have assumed upon the verdict, for the purpose of disposing of the question raised in this case, that it was permitted to fall through the negligence of one of the servants at work above. It is not claimed by the plaintiff that any liability arises against defendant for the injury he has sustained other than is supported by the assurance given him by the superintendent as above set forth. Until this had been given it is conceded—as it could not be denied—that, if the injury to plaintiff arose from the negligent acts of a fellow servant on the top of the elevator, the risk of such injury had been assumed by him; but it is urged that the statements of the superintendent took the case out of this rule, and amounted to such assurance that no injury would happen to plaintiff from the negligence of any other servant at that place as sustains his recovery. Without specifically designating the portions of the instructions to the jury, which submitted the case with exceptional clearness and impartiality, it is sufficient to say that this view was adopted in the charge of the trial court, and the jury was authorized to find that by such assurance so given by the defendant's superintendent the defendant thereby became responsible for any injury which might result from the careless act of a servant who negligently let the plank fall, if such fact was supported by the evidence.

Plaintiff relies upon the familiar doctrine that the negligence of the master from use of defective machinery or from the employment of incompetent fellow servants does not commit another servant to the assumption of such risks, where the latter has received a promise that the machinery furnished is to be repaired, or the incompetent servant discharged. In such case, where the danger is not imminent, the servant receiving the promise may remain a reasonable length of time in the service, relying upon the master to fulfil his promise to correct the evil, and does not thereby assume the risks which his knowledge of the source of danger implies, and may, upon proper proof, recover of the master the damages he may sustain in the meantime. Greene v. Minneapolis & St. L. Ry. Co., 31 Minn. 248, 17 N. W. 378; Lyberg v. Northern Pac. R. Co., 39 Minn.

15, 38 N. W. 632; Schlitz v. Pabst Brewing Co., 57 Minn. 303, 59 N. W. 188; Harris v. Hewitt, 64 Minn. 54, 65 N. W. 1085.

Authorities from other states have been cited recognizing the same doctrine, but no case to which we have been referred goes further than the rule above stated, or permits a recovery upon the failure of the master's promise, or save where the same applies to some absolute or personal duty of the master, and he is only liable under the conditions stated when he promises to do that which his own duty to his servant requires, which is the basis of the promise, and sustains an action for its breach. In no case, uncontrolled by statute, has the master been held liable for the violation of such promise where the negligence complained of is purely that of a fellow servant.

It is probable that where the nature of the service requires the employment of a large number of men, and the work is involved or complicated in character, from which follows the duty of the master to provide proper methods and reasonable rules for the conduct of the work to avoid injury, his personal duty in that respect would furnish a cause of action for a breach of a promise to provide such rules or warnings where the injury arises from his failure to do so; but under the instructions of the court in this case that claim would not support the verdict. The promise was made for the master by his superintendent. If it involved the duty to give proper instructions to the foreman, and to provide rules that would protect the servant, it may or may not, under the evidence, have been complied with; but by the instructions upon which this verdict rests the jury were authorized to find that the assurance of the master that the evil would be corrected was a promise, not to perform his own duties as defined in the law, but that the sporadic and occasional acts of negligence of his servants, which he did not directly control, and which were not within the general contract of the hiring, would not occur again.

It seems to us that there are substantial reasons why such an innovation cannot be ingrafted upon the law of master and servant. The servant must rely upon the promise. It is difficult to see how he can reasonably rely upon a promise by the master that some one else than himself will not be negligent. Under such a promise the

danger must be of such a nature that the servant has no apparent cause to fear immediate injury; but from the negligence of fellow servants, uncontrolled by the master's rules and regulations, the liability always exists of injury, which is one of the considerations upon which the doctrine of assumption of risk in any such case depends. Again, the servant has no right to continue longer than a reasonable length of time in the master's service awaiting the fulfilment of the promise, and the promise in the case at bar necessarily covered the continuance of the servant's term of service, and left no opportunity for judgment by the servant as to the probability of its fulfilment; and under the rules which control the legal relation of master and servant, where the master promises for himself to perform his personal duties, it seems clear that such obligation must be of a character that he can perform them, and that the servant can rely upon such performance.

Conceding, without deciding, that the master himself in such a case may, for a consideration, enter into an agreement that his servant shall not suffer from any injury of a fellow servant, this contract is not restricted by the implied relations between them, but amounts to nothing less than an agreement to indemnify the servant against the acts of another, or, in effect, to insure him against injury; and, if such a contract is to be implied from the talks between plaintiff and the superintendent in this case, it should at least have been more clearly expressed as to its intent and object than in the evidence before us, and be made clearly to appear that it was within the superintendent's authority, for it would constitute a new and distinct contract from that involved in the general scope of the employment, and should not be implied. The claim of plaintiff goes far beyond the rule which sustains the doctrine upon which he seeks to maintain his recovery, and it would require upon principles of public policy an agreement of indemnity for damages, not within the usual relation between master and servant, and would lead to a radical extension of the rule which has so long existed in this country, and been upheld by this court, that the servant assumes the ordinary risks of his employment.

Under the theory upon which this case was submitted to the jury

we do not think the verdict can be sustained, and the order of the trial court is reversed, and a new trial awarded.

START, C. J. (dissenting).

I dissent. The evidence in this case was sufficient to justify the jury in finding these facts: The plaintiff, an employee of the defendant, discovered that the place assigned to him in which to work was unsafe by reason of the negligence of his fellow servants who were working above him. He informed the defendant's superintendent of the danger, and told him in effect that he must quit work unless the danger was removed. Thereupon the superintendent, to induce him to continue his work, promised him that there should be no recurrence of the negligence which rendered the place unsafe, and that he would protect him therefrom. The plaintiff, without negligence, relied upon the promise, and resumed his work, and two days thereafter he was seriously injured by a repetition, for the first time after the promise was made, of the negligent acts of which he complained. The trial court instructed the jury in substance that, if they found these facts, the plaintiff was relieved from the assumption of the risk of the negligence of his fellow servants in the particular case, and was entitled to recover reasonable damages for his injuries. The real question on this appeal is the correctness of this instruction.

Upon principle I am unable to distinguish this case from one where the servant is injured by the use of defective machinery within a reasonable time after the master has promised to repair it. In the latter case the servant is relieved from the assumption of the risks in knowingly using defective machinery which he ordinarily assumes by the promise of the master to repair. So, in the other case, the servant is relieved from the assumption of risks due to the negligence of his fellow servants, in so far as such negligence might render the place where he was working unsafe, by the express promise of the master that there shall be no recurrence of such negligence, and that he will protect the plaintiff therefrom. Whether the exemption of the master, as to his servants, from the rule of respondeat superior, is based upon public policy, as some courts hold, or upon an implied contract, as perhaps a majority of them

hold, there can be no good reason assigned why the servant may not relieve himself in a particular case from the assumption of the negligence of his fellow servant, where it would not be negligent for him to do so, by the promise of the master, based, as in this case, upon a new consideration, to protect him from such negligence. No question as to the authority of the superintendent to make the promise in this case can properly be raised, for the action is based, not upon a contract of guaranty, but upon the rule of respondeat superior, with the exception as to fellow servants eliminated by the promise of the superintendent, made by him to induce the plaintiff to continue at his work.

LEWIS, J.

I concur with the CHIEF JUSTICE.