ELISE L. PERRAS v. A. BOOTH & COMPANY.[1]

January 4, 1901.

Nos. 12,431—(184).

## Master's Duty to Servant.

It is the duty of the master to furnish his servant a reasonably safe and suitable place in which to perform his work, and to keep and maintain it in such condition,—not to guard and protect from the negligent acts and conduct of fellow servants, but to put the place in a reasonably safe condition, and omit no personal duty to keep and maintain it in such condition.

## Death by Wrongful Act—Removal of Freight Elevator.

In this action one Super was defendant's foreman, having general charge and control of its business, with authority to direct the employees of defendant when and where to work, and what particular duty to perform. On the day complained of, he had ordered plaintiff's intestate to perform certain work, and was aware of the fact that prior to the commencement of such work the place of performance thereof was put in a safe and proper condition to do the same. After so ordering deceased to do and perform such work, Super, without notice or warning to him, removed one of the instrumentalities used in the performance thereof, and thereby rendered the place of performance dangerous and unsafe, in consequence of which the employee was killed. *Held*, that the questions (1) whether deceased was guilty of contributory negligence; (2) whether the act of Super was one of the ordinary risks of the employment of deceased, and assumed by him; and (3) whether Super was, in the act complained of, acting in the capacity of foreman and vice principal, or as a fellow servant,—should have been submitted to the jury, under the evidence produced at the trial, and that the trial court erred in directing a verdict for defendant.

[1] Reported in 84 N. W. 739, 85 N. W. 179.

Action in the district court for Hennepin county by plaintiff, as administratrix of the estate of Cyrille Perras, deceased, to recover $5,000 damages on account of the death of decedent. The case was tried before Simpson, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

A. B. Jackson and P. M. Babcock, for appellant.

Kitchell, Cohen & Shaw, for respondent.

BROWN, J.

Action to recover for the death of plaintiff's intestate, caused by the alleged negligence of defendant. A verdict was directed for defendant in the court below, and plaintiff appeals from an order denying a new trial.

Plaintiff's intestate was an employee of defendant, and received injuries while engaged in the discharge of his duties which resulted in his death. The negligence charged in the complaint as the cause of the death is the failure on the part of defendant to provide deceased with suitable and safe tools, instruments, and instrumentalities, and a reasonably safe and suitable place, for the performance of his duties. The facts are substantially as follows:

At and for some time prior to the date of the accident, defendant, a corporation, owned and maintained a warehouse in the city of Minneapolis, used for the storage of its goods and property, and for the storage of the goods of other parties. The building was several stories high, and in the basement thereof were cold-storage rooms. A door opened from the rear of the building, on the ground floor, upon a railroad side track extending along the building, inside of which door was a freight elevator, used in connection with receiving goods from railroad cars, and conveying them either to the upper stories, or down in the basement to the cold-storage rooms, as the nature of the goods required. It was the custom of defendant, in unloading goods from the railroad cars, to connect the sill of the door with the floor of the car by an iron plate, forming an inclined plane from the car to the door sill, which was a few inches lower than the floor of the car. When so

unloading cars the elevator was held stationary and on a level with the door sill, so that the hand trucks used in conveying the goods from the car would run down the iron plate onto the elevator without obstruction. The elevator shaft extended into the basement about ten feet. The doorway was protected by an outer door and an inner gate, but was not kept closed when the elevator was being used in connection with unloading cars; and, with the elevator away during such time, there was nothing to obstruct the entrance to the elevator shaft from this outer door.

Defendant is a corporation, and conducted the business connected with its warehouse through a foreman and a manager. One Super was foreman and had general charge of the employees of defendant, and the performance of their work and duties, and gave orders to them as to what to do, and the manner of doing it. Plaintiff's intestate was a carpenter, and had been in defendant's employ for a number of years, performing such work from time to time as was required of him by the foreman. While not engaged in carpenter work he frequently assisted in unloading cars, when ordered to do so. On the day of the accident the foreman ordered him to assist another employee in unloading a car of fish. He complied with the order, and proceeded to the car with the other employee, and commenced the work of transferring the fish therein to the cold-storage rooms in the basement of the building. Before commencing the work, plaintiff's intestate opened and fastened the outer door leading into the elevator shaft. The fish in the car were in boxes of different sizes, which were transferred into the building by loading them upon a hand truck, and wheeling the truck down the iron plate connecting the car with the elevator, and lowering the elevator into the basement. The elevator was an essential instrumentality in doing this work, and was kept stationary and on a level with the door sill while the work was being carried forward. Super, the foreman, was superintending the work, and was in and about the car, giving orders and directions with reference thereto.

After the work had been going on for some time, one O'Hara, an employee of another concern, occupying rooms in the building, called out from a second-story window that he wanted the use of

82 M.—13

the elevator. The foreman, Super, replied to him, from the car door, that he could not have it, as they were using it in connection with unloading the car, and he then passed from the car towards the elevator door. On being informed by O'Hara that he wanted the elevator but a very short time,—two minutes,—Super, without notice or warning to the men in the car, pulled the elevator up to where O'Hara was, and assisted in removing some apples to the third floor. In the meantime the men in the car continued at their work, and, in following the directions of the foreman, loaded a number of boxes of fish upon the truck, and wheeled it out upon the iron plate, and prepared to run it down onto the elevator. Deceased did not know that the elevator had been removed. In lowering the truck to the elevator, it was customary for him to precede the same, walking backward,—his face to the truck, and back to the elevator,—to retard its motion and prevent a too rapid descent of the truck. He followed the usual custom in this instance, but did not notice the fact that the elevator had been removed until the truck was upon the plate, when it was too late to return it to the car; and he was forced and precipitated into the elevator shaft, and to the bottom thereof, and killed, the truck and entire load of fish falling upon him.

The defense to the action is (1) That plaintiff's intestate assumed the risks incident to a removal of the elevator without notice to him; (2) that the act of Super, the foreman, in removing the elevator, was the act of a fellow servant; and (3) that plaintiff's intestate was guilty of contributory negligence.

1. It is contended by counsel for defendant that deceased assumed the risk of the removal of the elevator without notice to him, and that for this reason plaintiff cannot recover. The rule as to assumption of risk is laid down very concisely in the case of Quick v. Minnesota I. Co., 47 Minn. 361, 50 N. W. 244, substantially as follows: A servant is held ordinarily to assume such risks and dangers as are incident to the work or business engaged in, provided he knows and appreciates such risks and dangers; and he is held to know such as are manifest to one of ordinary common sense and observation, or which by the prudent exercise of the senses may be perceived and appreciated. It is urged by

counsel that deceased knew that the doorway leading into the elevator shaft was unprotected by an automatic gate, that he also knew that the elevator could be easily removed by some other employee, and that there was an ever-present danger that it would be so removed without his knowledge, in consequence of which the dangers resulting from such removal were ordinary risks of his employment. If the testimony in the case sustained counsel's contentions, their position would be sound. But it does not. At least, our construction or analysis of the evidence leads us to the conclusion that the question should have been submitted to the jury.

While it is undoubtedly true that deceased well understood that the doorway was not protected by an automatic gate, and assumed the risks in that respect, the evidence does not conclusively sustain the claim that other employees were in the habit of removing the elevator when being used as it was on this occasion, nor that there was an ever-present danger that it would be removed or taken from its position. On the contrary, the evidence fairly tends to show that it was not customary for such other employees to interfere with the elevator when so used. Such is the inference to be drawn from O'Hara's testimony; and the witness Kassube, a co-employee of deceased, testified that he never knew it to be removed under such circumstances. If it was the custom of the employees to remove the elevator at their will when being used for the purposes for which deceased was using it, and deceased knew of such custom,—and if it existed he undoubtedly did know of it,—he must be held to have assumed the dangers incident to such removal. But if there was no such custom, and it was, on the contrary, usual for such other employees not to interfere with or remove the elevator when so in use, without notice to those using it, deceased had the right on this occasion to assume that the usual order of things would prevail. Hooper v. Great Northern Ry. Co., 80 Minn. 400, 83 N. W. 440.

We are quite clear that the evidence does not conclusively sustain the position of respondent on this branch of the case, and that it is of such a character as to require the submission of the question to a jury. It is true that each employee used the ele-

vator when he had occasion to do so, but the evidence does not show that it was ever taken by one when in actual use by another employee.

2. The second contention of defendant is that Super's act in removing the elevator at the request of O'Hara was the act of a fellow servant, for which no liability attached to defendant. This presents the most difficult and most doubtful question in the case.

Much has been said and written with reference to the law of fellow servants and the application of the rule of vice principal. The books abound in learned discussions of the question. Refined distinctions and theories are found on every hand, and no little confusion exists with reference to the subject. We find in one state a definite and clear rule, or statement of it, and in others the same rule with additions or modifications, and in still others an entirely different rule. And in those states, like our own, where there is a definite and well-defined rule on the subject, we still find confusion, arising, not from a misapprehension of the law, but from the application of the rule to the peculiar facts of different cases. The rule in this state is stated in Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, and illustrated in Carlson v. N. W. Tel. Exch. Co., 63 Minn. 428, 65 N. W. 914; Hess v. Adamant Mnfg. Co., 66 Minn. 79, 68 N. W. 774, and Vogt v. Honstain, 81 Minn. 174, 83 N. W. 533. We understand from these cases that an employee or servant who is clothed with special powers and authority with respect to the management of the master's business and the control of his other servants in the matter of the performance of their work, and to whom is delegated the performance of the master's absolute duty to other servants with reference to the obligation to provide them with safe instrumentalities and a safe place to work, is, as to such other servants or employees, a vice principal, when engaged in the performance of the special powers and authority conferred upon him; he is a fellow servant when engaged in the common employment of the master.

In the case at bar it was the duty of defendant to furnish deceased with safe instrumentalities and a reasonably safe place in

which to perform his duties, and to keep and maintain such place in a reasonably safe and suitable condition,—not to guard and protect from negligent acts and omissions of fellow servants, but to put the place in a reasonably safe condition, and omit no personal duty to keep and maintain it in such condition. Did defendant perform that duty? There is no controversy as to the authority and duties of Super. He was defendant's foreman, having general charge and control over other employees and workmen, with power to direct and order them when and how to do the work of their employment, and was clothed with an apparent general supervision of defendant's business, in so far, at least, as related to this case. He had set deceased and his co-employee to work unloading the car, was in and about the car, and gave specific directions with respect to such work. The elevator was an essential instrumentality in the performance of that work, and, to render the place of performance safe and free from danger to workmen, it was absolutely necessary that it remain stationary at the point where connected by the iron plate with the car. There being no automatic gate to guard the doorway, the removal of the elevator rendered the place very dangerous, unless known to the workmen. The defendant furnished this instrumentality to deceased, it was placed in proper position for the work, and subsequently removed therefrom, and the place made dangerous and unsafe, by the very person to whom defendant had delegated its duty to provide and maintain a safe and suitable place, not in the performance of the work of defendant, but while acting in his capacity as representative of defendant, and by authority conferred upon him as such, and to accommodate one of the tenants in the building. He gave no warning to the men in the car,—at least, the evidence was such as to require the submission of that question to the jury; and we are asked to hold that his act in rendering unsafe the place he was delegated by defendant to keep in safe condition for employees was the act of a fellow servant.

We think this question should have been submitted to the jury. As we have already noted, the evidence does not conclusively show a custom among the employees of defendant to remove the elevator from its position when used in connection with unloading

cars, as on this occasion, whenever any of them had other use therefor. O'Hara evidently understood that he had no right to take it without permission, or at least without warning to the men using it, and the evidence does not show that any of the co-employees of deceased had authority to permit it to be taken away under such circumstances. Whether, if it had been in fact removed at the time complained of by some co-employee while engaged in the discharge of the duties of his employment, defendant would be liable, we need not determine. Such is not this case. The fact is that it was removed by defendant's foreman, not in furtherance of defendant's business, but for the accommodation of O'Hara, an employee of Stacy & Son. The act was not in the line of the duties of any of defendant's employees, so far as the evidence discloses; and it was for the jury to say whether, under all the circumstances, the acts and conduct of Super were properly referable to the exercise of the powers conferred upon him as foreman of defendant and as a vice principal, or whether as a fellow servant of deceased,—whether the act was within the scope of his general powers and duties as vice principal. The case of Hess v. Adamant Mnfg. Co., supra, is, on principle, directly in point, and we follow and apply it.

We have examined the record in this case with special care, owing to the importance of the case and of the questions involved; and in the light of former adjudications of this court,—especially the Hess case,—and the evidence as presented in the record before us, as we understand its probative force, we reach the conclusion that the questions suggested, including the alleged contributory negligence, should have been submitted to the jury under proper instructions.

Order reversed.

An application for reargument having been made, the court, on February 14, 1901, filed the following opinion:

PER CURIAM.

In making the statement in the former opinion to the effect that the act of Super in removing the elevator was not in furtherance of defendant's business, we did not intend to be understood as

holding or saying that Super had exceeded his authority as defendant's foreman, or that he was acting beyond the scope of his powers. A reading of the whole opinion will show that we intended to hold that that question was for the jury to determine. What we intended to convey by the statement was that the act of Super was not in furtherance of defendant's business in storing or in removing from place to place in the building its own goods. It does not appear that defendant's employees had any duty to perform with respect to handling the goods of other occupants of the building. For aught the evidence shows, the employees of defendant were engaged exclusively with its own goods, and had nothing to do with the goods or property of other parties stored in the warehouse. Therefore the act of Super in removing the elevator for the accommodation of O'Hara was not in furtherance of defendant's business of storing its own goods, and it was for the jury to say whether it was within his duty as a representative of defendant, and while acting in that capacity, or whether as a fellow servant.

We stated in the opinion, perhaps incorrectly, that Stacy & Son were tenants in the building, and there may be some other incorrect statement as to minor facts; but they are of no importance. The principal facts are correctly stated. Whether Stacy & Son were tenants or occupying the building under some other right is not of controlling importance. The court below will not be guided as to the facts by anything we have stated in the former opinion, but solely by the evidence as it will appear on a second trial.

Application for reargument denied