### JACOB SCHUS v. POWERS–SIMPSON COMPANY.[1]

February 21, 1902.

Nos. 12,856—(194).

| 85 | 447 |
|----|-----|
| f86 | 84 |

#### Private Logging Railway—G. S. 1894, § 2701.

> Defendant is a corporation organized for the purpose of manufacturing and dealing in lumber; buying, improving, selling, and dealing in real and personal property connected with its lumbering business; and, in addition thereto and in connection therewith, it owns and operates what is called a "logging railroad," which is equipped with four locomotives and a number of logging and box cars, used in carrying logs from the pineries to the sawmills owned and operated by it. It does not follow the business of a common carrier of passengers and freight, the operation of the road being limited exclusively to its own private business; but its servants and employees engaged in the operation of its trains are - exposed to the same dangers and risks as are employees and servants of railroad corporations engaged as common carriers. *Held,*

[1] Reported in 89 N. W. 68.

that G. S. 1894, § 2701, known as the "Fellow Servant Act," applies to defendant, and it is liable to an employee engaged in the operation of such railroad for injuries caused by the negligence of a co-employee or fellow servant.

## Personal Injury—Verdict Sustained by Evidence.

In this action (one to recover damages for personal injuries received by a brakeman in coupling cars on defendant's said railroad) the evidence received on the trial tended to show that there was a general custom in respect to the operation of the road for the engineer, when cars being coupled came together, immediately to stop his engine and hold it stationary until signaled to again move it by the brakeman making the coupling. It further tended to show that, on the occasion complained of, this custom was not observed by defendant's engineer, in consequence of which plaintiff was injured. It is *held* that the evidence was sufficient to require the submission of the case to the jury, and to sustain their verdict to the effect that such custom existed, and that the engineer's failure to follow and observe it at the time complained of was the proximate cause of plaintiff's injury.

## Same—Contributory Negligence.

Evidence examined and considered, and *held* to sustain the verdict of the jury to the effect that plaintiff was not guilty of contributory negligence, and did not assume the risks incident to making the coupling in question; also to sustain the verdict that plaintiff's cause of action was not settled and adjusted by an agreement between the parties made and entered into prior to the commencement of the action.

Action in the district court for Hennepin county to recover $10,000 for personal injuries. The case was tried before Elliott, J., and a jury, which rendered a verdict in favor of plaintiff for $1,000. From an order denying a motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Woods, Kingman & Wallace*, for appellant.

*F. D. Larrabee*, for respondent.

BROWN, J.

This action was brought to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had a verdict in the court below, and defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The facts are as follows: Defendant is a corporation organized for the purpose of buying and selling timber land; cutting, hauling, and driving logs and timber; buying, improving, selling, and dealing in real and personal property; and the carrying on of such other business as is conveniently and necessarily connected therewith. In addition to its lumbering business, and in connection therewith, it owns and operates what is called a "logging railroad." Its line extends into the pine woods from Hibbing, in St. Louis county, the distance of about twenty-nine miles, including spur tracks and branches. It is equipped with four locomotives and a number of logging and freight cars, which are used in carrying logs from the pineries to the sawmills owned and operated by it. It does not follow the business of a common carrier of passengers or freight, the operation of its road being limited exclusively to its own business. At the time complained of, plaintiff was in the employ of defendant upon this railroad as a brakeman, and was injured while coupling cars. The fact with respect to his injury, the manner in which it was received, and the evidence tending to show negligence on the part of defendant, will be stated further on in this opinion.

Four principal questions are presented for our consideration: (1) Whether defendant is a railroad corporation, within the meaning, or comes within the operation, of Laws 1887, c. 13 (G. S. 1894, § 2701) known as the "Fellow Servant Act"; (2) whether the evidence establishes negligence on the part of defendant, which was the proximate cause of plaintiff's injury; (3) whether plaintiff was guilty of contributory negligence; and (4) whether his cause of action for damages was settled and adjusted, and defendant released and discharged therefrom, by an agreement made and entered into between the parties prior to the commencement of the action.

1. It is contended that defendant is not a railroad corporation, within the intent and meaning of chapter 13, supra, and that in consequence it is not liable to one of its servants for injuries caused by the negligence and carelessness of a fellow servant. It is urged that the statute does not apply to defendant, for the

85 M.—29

reason that it was not organized as a railroad corporation, and for the further reason that it is not engaged as a common carrier of passengers and freight; its railroad business being confined exclusively to its own private affairs. The statute provides, generally, that every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by an agent or servant thereof by reason of the negligence of another agent or servant; but railroads under construction and not open to public use are excepted from the operation of the act.

The statute has been before the court repeatedly with respect to its validity and its application to particular servants and employees, and has been sustained, not as a law applying exclusively to railroad corporations as a class,—for, if that were its purpose, it would, as intimated by Judge MITCHELL in Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156, be unconstitutional and void as class legislation,—but as applying to employers whose servants and employees are exposed to the peculiar hazards and dangers incident to the operation of railroads. In that case the court said:

"If a distinction is to be made as to the liability of employers to their employees, it must be based upon a difference in the nature of the employment, and not of the employers. One rule of liability cannot be established for railway companies, merely as such, and another rule for other employers, under like circumstances and conditions."

Within the reasoning of that decision, and other cases in this court (Smith v. St. Paul & D. R. Co., 44 Minn. 17, 46 N. W. 149; Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974; Mikkelson v. Truesdale, 63 Minn. 137, 65 N. W. 260), the test in interpreting and construing this statute is not whether the corporation engaged in operating the railroad was organized as a railroad corporation, but whether the road being operated is a railroad, within the ordinary meaning of the term, in and about the operation of which employees are exposed to those dangers and risks against the consequences of which the legislature intended to provide.

In Sutherland, St. Const. 218, it is said to be indispensable to a

correct understanding of a statute to inquire what is the subject of it,—what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained, and its general intent, a key is found to all its intricacies. General words may be restrained to it, and those of narrower import may be expanded to embrace it, to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency with such intention. The subject-matter of the statute under consideration, and its intent and purpose, were to protect employees engaged in a dangerous and hazardous employment; and, within the decisions cited, the character of employer is not of controlling importance. The statute is to be given, if not a liberal, at least a reasonable, interpretation, and one that will carry into effect the intent of the legislature. If the character of the employer, within the meaning of the statute, is not important, and the nature of the employment is the test to be applied in construing the statute, the expression "any railroad corporation engaged in the operation of a railroad" should, within the rule laid down by Sutherland, be enlarged and expanded so as to include any person, company, or corporation engaged in operating a railroad, incident to which operation are the dangers and hazards from which the legislature intended to protect the employees. Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788.

Defendant was not organized as a railroad corporation, it is true; but it is conceded that it is operating a line of railroad equipped with engines and cars, the operation of which, so far as concerns the running of its trains, is identical with ordinary railroads, except that it is in the interests of its own private affairs. Every purpose intended to be subserved by the statute applies to it. Its servants and employees in the operation of its trains are exposed to the same dangers and hazards, if not greater, as employees of ordinary railroads; and to hold that it does not come within the statute would, in our judgment, be illogical and out of harmony with the prior decisions of the court, against the manifest intent of the legislature, and a cramped and unnecessarily restricted interpretation of the law. The mere fact that it is called

a "logging railroad," and came into existence since the passage of that act, is by no means decisive of the question.

It is a general rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects, and business within their general purview and scope coming into existence subsequent to their passage. McAunich v. Mississippi, 20 Iowa, 338. And within this rule, even though defendant is engaged in operating a "logging railroad" only, and exclusively in the interests of its private affairs, and though such railroads were not known at the time of the passage of the statute, and consequently not then in the contemplation of the legislature, the operation of its road, in respect to the dangers and hazards to which its employees are exposed, brings it squarely within the spirit and purpose of the law; and it must, to effectuate fully the intention of the legislature, be held to be within its scope and operation.

In the case of Mikkelson v. Truesdale, supra, it was held that the statute applies to a receiver engaged in operating a line of railroad as the representative of the court, in the interests of bondholders and creditors. We are unable to point out any logical distinction between a receiver engaged in operating a railroad and a lumber company similarly engaged, in so far as applicable to this statute. A like conclusion was reached in Wall v. Platt, 169 Mass. 398, 48 N. E. 270,—a case involving a similar statute. In Daniels v. Hart, 118 Mass. 543, mortgagees in possession of a railroad and operating it were held to be within the meaning of the statute. These decisions are in line with sound reasoning and the spirit and purpose of such statutes. It was held in Funk v. St. Paul City Ry. Co., 61 Minn. 435, 63 N. W. 1099, that the statute did not apply to street railways. But the reasons for the statute do not in any essential degree apply to such railways. Employees on such roads are not exposed to such hazards, risks, and dangers as are the employees of railroad corporations proper.

The spirit and purpose of the statute must be looked to in determining its scope and application; and as the spirit and purpose of this law was the protection of employees engaged in a hazardous and dangerous work, though the literal language thereof limits its

operation to railroad corporations, we hold that it applies to any corporation or person engaged in operating a line of railroad, incident to which operation are the dangers and hazards to employees the legislature intended to provide against.

2. It is contended by appellant that there is no evidence sufficient to support the finding of the jury that plaintiff's injury was caused by defendant's negligence. The accident occurred in the nighttime, when it was very dark. The employees in charge of the logging train had been engaged in hauling car loads of logs from spur tracks to the main track of defendant's road, and plaintiff was injured in coupling two of the cars. The cars so coupled by him were loaded with logs which were so placed thereon that the ends projected over the ends of the cars to such an extent that the first effort to couple them failed, the ends of the logs coming together and preventing the coupling. The impact, however, drove the logs back on the respective cars, so that at the next attempt to couple the drawbars came together, and the coupling was made.

The evidence tends to show that it was customary, in making couplings of this kind, for the engineer, when the cars being coupled came together, to stop his engine immediately, and not move it until signals were received from the person making the coupling, and after he had come from between the cars. This custom and practice are not disputed. There is evidence, also, that the brakeman making the coupling usually signaled the engineer for the purpose of guiding the movement of the engine as it approached the car to which the coupling was to be made, and that just prior to the time the cars came together a signal would be given by the brakeman to stop the engine. No such signal was given on this occasion; but plaintiff relies for recovery, not upon a failure to obey that signal, but upon a failure on the part of the engineer to observe the usual custom in respect to stopping the engine and train at the time the coupling is made. It is not disputed in the evidence but that the engineer is able to tell from the jar of the train when the cars come together, and, in view of the fact that it appears from his testimony that when they came together on this occasion he did immediately stop his engine, it is not important that the usual signal to stop was not given. The

custom being established, it is clear that plaintiff had the right to rely upon its observance, and the failure on the part of the engineer to do so was negligence. Romick v. Chicago, 62 Iowa, 167, 17 N. W. 458; Hooper v. Great Northern Ry. Co., 80 Minn. 400, 83 N. W. 440. Besides, it is not claimed that the failure to give the stop signal was the cause of the continued movement of the train after the coupling was made; but it is insisted by appellant that the engine was in fact stopped, and did not move a greater distance than two or three feet.

It is contended by plaintiff that at the time he entered between the cars to make the coupling, instead of observing the usual custom and rule as to stopping the engine when the coupling is made, the engineer continued to move and push the cars forward, in consequence of which plaintiff was injured. Because of the fact that the logs extended over the ends of the cars so being coupled, plaintiff could not enter between them in an erect position, but was compelled to do so in a stooping position. To make the coupling was a dangerous undertaking. He knew of the situation and the manner in which he would be required to go between the cars, and before doing so he called the engineer's attention to the fact, and requested him to move his engine back carefully, so as to avoid any danger. As stated, the specific charge of negligence is that the engineer failed to observe the usual custom in respect to stopping the engine at the time the coupling was made. On this theory the case was sent to the jury.

The evidence on the part of defendant tends to show not only that no signal was given to the engineer to stop his engine at the time plaintiff entered between the cars to make the coupling, but that the engineer did in fact stop it, by shutting off steam and reversing the machinery. It is claimed that the evidence is conclusive that the engineer exercised care and prudence, and was guilty of no failure or neglect in the respects contended for by plaintiff. If this were true, defendant should have judgment; but a careful examination of the evidence satisfies us that a case was fairly made for the jury, and their verdict in plaintiff's favor cannot be disturbed.

Plaintiff's evidence to the effect that the engineer did not stop

the engine and cars at the time the coupling was made is corroborated by undisputed evidence tending to show that fact. It appears that there were not more than four cars attached to the engine at the time the coupling was made, and five after it was made. It further appears that just before making this coupling, plaintiff and his fellow brakeman blocked the wheels of the fifth car with a large stick of timber or wood, about six inches in thickness; the testimony is that (and we find nothing in the record to dispute it) after the coupling had been made, the fifth car, to use the language of the witness, "passed clear over the blocks." It is the claim of plaintiff that the train proceeded a distance of a car length and a half after the coupling was made. If defendant's testimony that the engineer did in fact bring the engine and cars to a standstill at the time the coupling was made be true, it is not very clear how the fifth car could have passed over the blocking. The fact that it did tends to show, and to corroborate plaintiff's assertion, that the engine was not stopped.

Again, plaintiff was picked up after his injury at the side of the track, about the center of the third car from the engine, and he testified that the coupling was made between the fourth and fifth cars. It is not seriously controverted that plaintiff was found near the track at about the center of the third car, though it is claimed by defendant that the coupling was made between the third and fourth. If plaintiff's testimony that the coupling was made between the fourth and fifth cars is true, the fact that he was found immediately after the accident at about the center of the third car tends to corroborate his claim that the engine was not stopped when the coupling was made, but continued to move forward the distance of a car or more. The truthfulness of the several witnesses was for the jury to determine, and we are unable to see our way clear to declare, as a matter of law, that the evidence is conclusive against the contention that the engineer was negligent.

3. It is claimed that plaintiff was guilty of contributory negligence, and that he assumed the risks incident to making the coupling in question. It is true, as a general rule, that, if a person by his own carelessness contributes to his injury, he cannot recover.

It is also true that a railroad employee assumes all the ordinary risks and dangers of his employment; but this assumption of risks extends only to such as are, in point of fact, ordinary risks of the employment. He does not assume risks and dangers resulting from the negligence of his fellow servants. The question of plaintiff's. contributory negligence is disposed of, we think, by the decision in Corbin v. Winona & St. Peter R. Co., 64 Minn. 185, 66 N. W. 271,—a very similar case. There the car was loaded with iron rails, and, as here, they projected over the end of the car; and, in order to make the coupling, it was necessary that the brakeman stoop over in going between the cars for that purpose. He knew the situation, and the condition in which the cars were loaded; and the court held that he was not guilty of contributory negligence, as a matter of law, but that the question was one of fact for the jury to determine. That case is on all fours with the case at bar, so far as this question is concerned, and is decisive and controlling.

4. About a month after plaintiff received his injury, and while he was still at the hospital, an agent of defendant called upon him and paid him the sum of $75, obtaining therefor a written release of defendant of all claims for damages arising in plaintiff's favor by reason of this accident. It is claimed by defendant that this payment was made and accepted in full settlement of plaintiff's claim, that an agreement to that effect was entered into by plaintiff understandingly, and that he was fully apprised of the contents of the written release before it was signed by him. Plaintiff claims that the payment to him was stated at the time to be a donation by defendant; that nothing was said to him about the settlement of his claim for damages; that his signature to the written release was obtained by the fraudulent representations of defendant's agent; that he cannot read the English language, and did not read the paper or release signed by him, but relied wholly upon the statements of defendant's agent as to its contents.

A similar situation was presented in the case of Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640. It was there held, upon evidence similar to that presented in the record in this case, that the question whether the money was paid

in satisfaction of plaintiff's damages, and whether the release was signed for the purpose of discharging the railroad company from liability, or whether it was procured by fraud on the part of the company's agent, were questions for the jury to determine. The verdict in that case was to the effect that the release was obtained by fraud, and this court sustained it.

We discover no reason, after a careful reading of the evidence, for disturbing the finding of the jury in this case, though there are some items of evidence which tend strongly to corroborate defendant's contention, but it is by no means conclusive in its favor. Mullen v. Old Colony, 127 Mass. 86. There are circumstances, too, tending to corroborate plaintiff's contention that the money was paid as a donation. If defendant did not deem itself liable to plaintiff on account of his injuries, no reason is apparent why it should donate to him any sum whatever; and, on the other hand, if, in its opinion, a liability in fact existed, and one which, in justice, it ought to settle, it is fair to assume, as the jury probably did, taking into consideration the nature and extent of plaintiff's injuries, that it would have offered him considerably more than the very nominal sum of $75.

Our conclusion is that the verdict of the jury must be sustained. Order affirmed.