This action is brought to recover damages for the death of the plaintiff's intestate, her husband, who was an engineer on a train of the Albany and Susquehanna road which collided at the New Scotland crossing with a train of defendant on the Athens road, by which collision the injury occurred.
The counsel for the defendant presented several exceptions *Page 197 
to the rulings of the court which are urged as grounds for reversal, and which so far as are deemed material will be briefly noticed. At the close of the case a motion for a nonsuit was made, upon the ground that no negligence was shown upon the part of the defendant, and that contributory negligence appeared on the part of the deceased. It appeared that a parol agreement had been made for a good consideration between the officers of the corporations respectively owning the two roads originally, that all trains upon the Athens road should come to a full stop before crossing the Susquehanna track, and that the trains on the latter road were to have the right of way, and this agreement had been uniformly observed.
The printed instructions of the defendant to their engineers and other employees required that all trains should come to a full stop before crossing. Lent, the depot agent of the Susquehanna Co. at that point, was also in the employ of the defendant as telegraph operator and flagman. Upon the occasion when the accident occurred the Athens train was approaching the crossing, and had slowed up for the purpose of stopping, when Lent displayed a white flag, indicating that the track was clear, and the train blowed for taking off brakes and the speed of the train was accelerated, and it proceeded towards the crossing. At the moment of displaying the white flag to the Athens train, the Susquehanna train appeared coming over the top of the grade from the west, when, it is claimed, and the evidence I think fairly proves, that Lent proceeded a short distance up the Susquehanna road, and waved a red flag which indicated danger, and that the train should stop, and then returned at or near the crossing and again waved the white flag to the Athens train, and then discovering that the Susquehanna train was not stopping, he waved the red flag to both trains, but they were too near to stop, and the collision occurred, and the intestate was killed. Upon these facts it is clear that the judge committed no error in submitting the question of the negligence of the defendant to the *Page 198 
jury, and the jury were justified in holding that it was gross negligence on the part of Lent to signal the Athens train not to stop, and induce those in charge to proceed. It is true that the Susquehanna train was behind time, but Lent knew when it left a station about seven miles west, and with that knowledge he must have known that the train, if nothing unusual had occurred, was within a short distance, and was liable to appear at any moment. It appears that as soon as he gave the signal to the Athens train to proceed, the Susquehanna train did appear in sight about three-quarters of a mile distant. Knowing, therefore, that the latter train was within a short distance, he was not justified, especially in violation of his instructions, and the definite arrangement of the two roads, to induce the Athens engineer to proceed without stopping, and if that train had stopped the accident would not have occurred. In this act Lent was the agent of the defendant, and it is responsible for the consequences. After committing the first blunder, it is quite probable that Lent acted according to such judgment as he was enabled to exercise under the exciting circumstances which existed, but his conduct after that is open to criticism. Upon discovering the Susquehanna train when he first waved the white flag to the Athens train, if he had immediately waved the red flag to that train it is not improbable that he might have stopped it, and after flagging the Susquehanna train to stop, it might be claimed as imprudent to wave the white flag at or near the crossing as the Susquehanna train might suppose that it was intended as a signal that the track was clear for that train. At all events a collision was produced by a violation of the arrangement between the two companies, and the positive instructions of the defendant, and whether the efforts made to correct the original error were the best that could have been adopted or not, is not very material. The facts developed were abundant to justify the jury in finding negligence.
I think also that the question of contributory negligence was properly submitted to the jury. The claim that such *Page 199 
negligence appeared is based entirely upon the assumption that the deceased either saw without heeding, or ought to have seen the red flag when it was first waved by Lent, and that if he did see it he might have stopped the train. It must be observed in the first place that he had no reason to expect being flagged to stop. He knew that he had the right to the track, and that the Athens train was required to stop. He was bound to exercise vigilance and care in approaching the depot at all times, but I am not aware how it can be determined as a matter of law that he either did or could have seen the flag. The evidence does not establish it conclusively. He was running on a descending grade, and was necessarily engaged in managing the train, intending to stop at the station, and run on to the switch, but he had no reason to suppose that he was required to stop west of the crossing. The red flag was waved but a moment or two, and it is impossible to say that by reason of smoke, or the performance of some duty at that instant, he was not prevented from seeing it. Again, it cannot be determined as matter of law that he was not deceived by the second waving of the white flag to the Athens train. If he saw that, he might well suppose that it was intended for his train because he had the right of way, and the evidence tends to show that he could not see the Athens train, and if he could he might assume that it would stop and let him pass. If the evidence was undisputed, the inference to be drawn from it was an inference of fact, and not of law, and as to some of the circumstances the testimony was not entirely harmonious and undisputed. No error was committed in denying the motion for a nonsuit.
Error is claimed upon a refusal to charge that a violation of the rules of the defendant by its employees was not negligence, and in submitting the question to the jury, whether such neglect in this case caused the injury, and whether it was negligence not to be governed by them. It may be that a violation of some of the rules of the company would not be sufficient to constitute negligence, but the fact of such *Page 200 
violation is competent evidence upon the question of negligence. These rules are made for the guidance of the employees, and are presumed to embody the views of the company, the observance of which it regards as essential to the safe and proper conduct of the business, and if in a given case it could be shown that an injury occurred by reason of such violation, the presumption of negligence would be strong, and in some cases decisive. In some sense the judgment of the company as to the character of the act would in this way be obtained, and it is a species of evidence to which the company ought not to object. It is a mistake to suppose that only the company and its employees are concerned in these instructions. The public are interested in having the best possible rules prescribed, and in having them observed and obeyed.
The court refused to charge that if at the time the flagman signalled the defendant's train to come on, the Susquehanna train was not in sight, the act of the flagman in so flagging it, was not negligent. No error was committed by this refusal for the reasons stated upon the exception to a motion for a nonsuit. Although the train may not have been in sight, the flagman had reason to believe that it was not far distant. It could only be seen three-quarters of a mile, and prudence at least demanded that he should have allowed the Athens train to come to a full stop in accordance with the arrangement and the uniform custom, and the facts show that if that train had stopped, the accident would probably have been avoided, because the Susquehanna train would have appeared in sight before the Athens train could have started, and the latter could have been retained for the other to pass.
Error is also alleged in the refusal of the judge to charge that the omission of the engineer of the defendant's train to come to a full stop was not, under the circumstances of the case, evidence of negligence on his part. It is not very material whether the negligence should be imputed to the engineer or the flagman, or both. The negligence consisted in *Page 201 
not stopping the train, and for that omission the defendants are responsible, whether one or more of their servants were at fault.
But I am not prepared to say that the engineer was justified in not stopping, notwithstanding the signal. The instructions of the defendant were imperative that "all engines will come to a full stop before crossing the track of the Albany Susquehanna railroad, and will not proceed until the way is clear," and that the engineer will not be "relieved from blame if he proceeds in violation of the instructions or orders, even should the conductor, from negligence or misapprehension, direct him to do so." The instructions state that a white flag indicates that the way is clear, but such a flag does not necessarily dispense with the positive instruction to come to a full stop, nor is it inconsistent with the observance of the instruction. The white flag might be proper when the train did stop. The Athens train could not see the Susquehanna train until it came near the crossing, while the flagman could see it three-quarters of a mile; and there is nothing in the instructions to indicate that the train need not stop when the white flag appeared.
A point was made upon the admission in evidence of the parol agreement between Mr. Ramsay in behalf of the Susquehanna company, and Mr. Drew in behalf of the corporation then owning the Athens road, requiring that trains of the latter road would stop before crossing the track of the former. This is not tenable. It was not necessary to the plaintiff's case that such an agreement was made. It was sufficient if such was the arrangement and usage between the companies; but that an agreement founded upon a valid consideration had been made was relevant in corroboration and support of the arrangement and usage.
The presumption is that both parties recognized the agreement as binding by acting upon it. The other points are not deemed important.
The judgment must be affirmed.
All concur.
Judgment affirmed. *Page 202