## ROSANNA GLINES v. OLIVER IRON MINING COMPANY.[1]

June 25, 1909.

Nos. 16,216—(177).

**Personal Injuries—Fellow Servant Rule.**

In an action for personal injuries it is *held* that defendant, in the operation of its railroad, comes within the statute abrogating the fellow-servant rule as to railroad companies. Kline v. Minnesota Iron Co., 93 Minn. 63.

**Reliance on Signals.**

The injured party, a brakeman in charge of one of its trains, had the right, while in the discharge of his duties, to rely upon all warnings and signals required to be given by the rules of the company or adopted by common custom for the protection of those engaged upon or about its tracks.

**Evidence of Negligence.**

The evidence sustains the charge of negligence on the part of other employees of defendant in not complying with such custom and rules.

**Contributory Negligence.**

The questions of contributory negligence and assumption of risk were properly submitted to the jury.

**No Error.**

No reversible errors are presented by the record.

Two actions in the district court for Itasca county; one by plaintiff, as guardian of Archie W. Glines, to recover $25,000 for personal injuries to her ward and the other in her own interest to recover

[1]Reported in 122 N. W. 161.

$2,000 for loss of his services. The two cases were tried together before McClenahan, J., and a jury which rendered a verdict in favor of plaintiff as guardian in the sum of $10,000 and one in favor of plaintiff in her own interest in the sum of $1,800. From an order denying defendant's motion for judgment notwithstanding the verdicts or for a new trial, it appealed. Affirmed.

*Joseph B. Cotton, Frank D. Adams* and *C. C. McCarthy,* for appellant.

*John R. Heino* and *Theo. Hollister,* for respondent.

BROWN, J.

Archie W. Glines, an infant under the age of twenty-one years, was injured while in the employ of defendant, and his mother brought two actions against the company to recover damages therefor, one in her own behalf for the loss of services, and the other as his guardian for his own benefit. Both were consolidated and tried together in the court below, resulting in verdicts for plaintiff in each case. Defendant thereafter moved for judgment notwithstanding the verdicts or for a new trial, and appealed from an order denying the same.

The facts are substantially as follows: Defendant, a mining corporation, operated, in connection with the principal purpose for which it was incorporated, a railroad equipped with engines and cars suitable for the purpose. On the occasion of the accident complained of, defendant was engaged in stripping one of the mines of the surface of earth covering a deposit of iron ore. In doing this work the railroad tracks were laid into and upon the tract of land under the surface of which there was a deposit of iron ore, and from thence to dumping grounds two miles distant. Two tracks were constructed for this purpose, upon one of which trains loaded with earth were taken from the mine to the dumping ground, and upon the other, a parallel track, empty trains were returned to the mine to be reloaded. It employed in this work ten trains, consisting of an engine and from fifteen to twenty cars each, and each in charge of an engineer, a fireman, and a brakeman. Each train made in the neighborhood of ten trips to and from the mine during every twenty-four hours, an average for all trains of about one hundred during that space of time, and were con-

stantly in operation, both day and night. A train would be taken to the mine, there loaded by means of steam shovels, and then proceed to the dumping grounds, where the cars would be unloaded and immediately returned. The cars are designated in the record as "dump cars," were large and heavy, and carried many tons of material. They were so constructed that, by raising one side a proper distance, the earth and material therein would slide out without other act or effort on the part of workmen. The tracks proceeded from the mine in a southerly direction some distance, when they curved to the west, then curved to the south, and from thence on to the dumping grounds, and were distant from each other, at least at the point of the accident involved in this action, about nine feet. Returning from the dump each train would come to a stop at a point a short distance from a certain highway bridge extending over the tracks, designated in the record as "Gayley Avenue bridge," and located near the first curve in the track as it leads from the mine. There a crew of employees would "right" the cars—that is, readjust them properly for reloading—after which they would proceed to the mine.

Certain regulations designed to protect employees from injury had been adopted by the company respecting the operation of these trains. Each engine was equipped with a front headlight, with one also upon the tender facing the rear of the engine. Each brakeman was required to place a lantern or red light on the rear car of his train, and by the rules of the company was held responsible for its presence at all times during the progress of the work. It is claimed by plaintiff that a uniform custom made it the duty of the engineer, as he proceeded from the mine with loaded cars, to sound the whistle of his engine as he approached Gayley Avenue bridge as a warning to trainmen and those who might be engaged on the other side of the bridge "righting" cars of an incoming train. This custom was disputed by defendant. Glines, as already stated, was in the employ of defendant in the capacity of brakeman, and as such had charge of one of these trains, working nights. On the night of November 10, 1907, the train of which he had charge, after having proceeded with loaded cars to the dumping ground, returned to the usual stopping place near Gayley Avenue bridge, and came to a stop for the purpose of permitting the

righting and readjusting of the cars. Glines immediately stepped from the engine, where he was required to be when the train was in motion, and crossed over the adjoining track, upon which loaded trains came from the mines, to ascertain, by looking back, whether the lantern was properly lighted and in place at the rear end of his train. This occupied his attention but a few moments. While returning to his engine he was struck by the train on the outgoing track and severely injured.

These actions were thereafter brought to recover damages for the injuries so received, and were predicated upon the alleged negligence of defendant in three respects, namely: First, that in view of the age and inexperience of Glines it was defendant's duty properly to warn and instruct him of the dangers of his employment, and that it failed to do so; second, that the engineer of the train which ran into and injured Glines was negligent in not sounding the whistle of his engine as he approached Gayley Avenue bridge, in accordance with the custom uniformly followed; and, third, that the brakeman in charge of that train was guilty of negligence in failing to place a red light on the end car thereof as required by the rules of the company—by reason of all of which Glines received his injuries.

Defendant answered, denying the alleged negligence, and pleaded in defense that Glines, at the time he entered its service, was familiar with all the dangers and risks of the employment, and therefore assumed them, and that his injury was caused solely by his contributory negligence. All questions and issues raised by the pleadings were submitted to the jury under full and carefully measured instructions, and the verdict for plaintiff affirms the negligence of defendant, and negatives assumption of risks and contributory negligence on the part of Glines.

The principal question discussed by counsel for appellant on the oral argument was in support of the contention that the trial court erred in refusing to direct a verdict for defendant at the conclusion of the trial. That the court erred in this respect is supported by an elaborate and earnest argument that the evidence wholly fails to show actionable negligence, but does affirmatively show contributory negligence and assumption of risk on the part of Glines. We have exam-

ined the briefs and record with considerable care, with the result that in our opinion the questions referred to were properly submitted to the jury.

The record is very voluminous, and it would serve no useful purpose to enter into an extended discussion of the evidence. Glines, the injured party, was at the time of the accident between seventeen and eighteen years of age, and the evidence tends to show that he was placed at this work without previous warnings or instructions from defendant of the dangers and perils incident thereto. That the work was attended with extreme danger to life and limb is too apparent for argument. Trains upon this road were in constant operation day and night, and closely followed each other in and out of the mine at all times. The work was carried on with haste, and the expeditious performance of the duties of each train crew was essential to prevent tying up or delaying the whole enterprise; and, while the evidence tending to show the previous knowledge and experience of Glines is strong and somewhat persuasive, we concur with the trial court that whether warnings or instructions should have been given him by defendant was a proper question for the jury to determine.

Whether the defendant's servants were negligent in not giving the usual signals of the approach of the train which struck Glines was also for the jury. That Glines had the right to rely upon an observance of the custom of sounding the whistle of a train approaching the bridge, and on the exercise of due care on the part of the brakeman in charge thereof to place a red light on the end car, there can be no serious doubt within our decisions. Jordan v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 8, 59 N. W. 633, 49 Am. St. 486; Floan v. Chicago, M. & St. P. Ry. Co., 101 Minn. 113, 111 N. W. 957; Joyce v. Great Northern Ry. Co., 100 Minn. 225, 110 N. W. 975, 8 L. R. A. (N. S.) 756; Hooper v. Great Northern Ry. Co., 80 Minn. 400, 83 N. W. 440. The evidence tends to show a custom of sounding the whistle at the bridge, and a failure to observe it, and also tends to show that a red light was not displayed on the approaching train, as required by the rules of the company. The engine was pushing this train, and a red light should have been displayed on the front end of the forward car. Glines testified that as he alighted from his engine he looked down

the track in the direction from which trains came from the mine on the adjoining track and discovered no light, and did not hear the whistle, though the engineer of that train testified that he sounded it at the usual place. It was a dark night, and obviously it was important to the safety of employees engaged upon or about the railroad tracks that the usual warning signals be given; and, though the evidence upon this as well as on the other branches of the case was conflicting, it presented a question for the consideration of the jury.

Nor will the evidence justify, as a conclusion of law, the contention that Glines either assumed the risks incident to his employment or was guilty of contributory negligence. We discover no sufficient basis for the claim, to be declared as a matter of law, that he assumed the risks, in the evidence that the red light on the forward end of the train sometimes became extinguished, of which fact it is claimed Glines had notice, nor in the evidence that he solicited this position, or in that tending to show the extent of his experience in other departments of the work. Glines had the undoubted right to rely in a measure at least upon all customary warnings and signals for his protection, and it cannot on the evidence before us be held as a matter of law that he voluntarily waived or abandoned his right to such protection.

The contention that he was guilty of contributory negligence in going upon the adjoining track to ascertain the presence or absence of the red light upon his own train was properly submitted to the jury. He testified that when he left his engine, when it stopped at the point for readjusting the cars for reloading, he looked and listened for an approaching train on the adjoining track and neither heard nor saw one; and while it appears fairly conclusive that the headlight on the tank of the approaching engine, backing up, was lighted, whether his view thereof was obstructed by the string of cars being pushed toward him was clearly a question of fact. He was not, in passing over the opposite track to ascertain whether his red light was in order, outside of his duties, nor necessarily deprived of the right to rely upon the obligation of his fellow servants to warn him in the usual manner of their approach. He could, it is true, have proceeded to the rear of his train to gain the desired information; but it cannot be said as a matter of law that he was negligent in not adopting that course. Up-

on the whole record, therefore, we affirm the action of the trial court in sending the case to the jury.

This brings us to the assignments presenting certain alleged errors in the admission and exclusion of evidence and in the instructions and refusals to instruct the jury. To discuss these assignments separately —eighty or more—would extend this opinion into a volume and then be of no practical value as a precedent. We have carefully examined them all, and content ourselves with the statement that no substantial or reversible error is presented. The charge of the court, taken as a whole, was a comprehensive presentation of the issues to the jury in understandable form and language, and included every question proper to be given under the pleadings and evidence. There was no error in the charge to the effect that defendant was operating a railroad within the meaning of our statute abrogating the fellow-servant doctrine as to railroad companies. The case in this respect comes within Kline v. Minnesota Iron Co., 93 Minn. 63, 100 N. W. 681.

The evidence sustains the verdict in both cases, and the damages awarded are not excessive.

Order affirmed.