## JOHN E. MANNING v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

February 28, 1930.

No. 27,442.

[1]Reported in 229 N. W. 566.

*Junell, Oakley, Driscoll & Fletcher* and *Leavitt R. Barker,* for appellant.

*Davis & Michel,* for respondent.

DIBELL, J.

Action under the federal employers liability act to recover for injuries sustained by the plaintiff, a passenger engineer, while employed by the defendant in interstate commerce. There was a verdict for $35,000. Upon the defendant's alternative motion for judgment notwithstanding or a new trial the court denied judgment but granted a new trial unless the plaintiff consented to a reduction of the verdict to $27,500. The plaintiff consented. The defendant appealed.

The plaintiff was the engineer of train No. 1, a through passenger train leaving Chicago at night and arriving at Minneapolis in the morning. Train No. 2, a through passenger, left Minneapolis at night and arrived at Chicago in the morning. On the early morning of December 25, 1925, say about two o'clock, the plaintiff was running west under orders to meet train No. 2 at Lamont, Iowa. He had the right of way on the main track, and No. 2 was to take the passing track. The switch was 2,360 feet west of the center of the depot. The plaintiff stopped at the depot, a flag station, and unloaded the passengers. But for the passengers he would have proceeded to the switch without stopping at the depot. When the passengers were unloaded the conductor gave him the "proceed" sign. No. 2 was then in sight. The plaintiff waited until it turned onto the passing track and approached within perhaps 200 feet of his train, stopped, and the engineer dimmed his light. No. 2 had

not cleared the switch. Its engineer mistakenly thought it had. He should not have stopped and dimmed his headlight. There was another train, or at least an engine, on the side track. The record does not make the surroundings wholly clear. Distances are uncertain.

The plaintiff claims that the engineer of No. 2, as he put out his light, blinked it, and that the blinking was a well understood signal, adopted and used for many years, that the train on the passing track was clear of the main track and that the train on the main line might proceed. The testimony to this effect was disputed by the defendant; but there is such testimony and it must be reckoned with.

The rule book of the defendant contains more than 1,000 rules. Under the heading "Train Signals" rule 17 provides:

"The headlight will be displayed to the front of every train by night, but must be concealed when a train turns out to meet another and has stopped clear of main track, or is standing to meet trains at the end of double track or at junctions."

Rule 17(a) provides:

"When rules require the headlight to be displayed, electric headlights on engines will be dimmed:

"In yards where switch engines are employed.

"Approaching stations at which stops are to be made, or where trains are receiving or discharging passengers.

"When standing."

Rule 90 among other things provides:

"Trains must stop clear of the switch used by the train to be met in going on the siding."

The proof of a custom of so extensive application as claimed by the plaintiff, either as to its existence or as to its application, or its effect on printed rules, is far from satisfactory. If under the evidence there was a custom making the defendant liable for its careless use, it must be quite as definite as defined by the trial court in this language:

"It would not be sufficient in this case to say that it was customary for one engineer to signal another engineer by flashing and cutting out the headlight on his engine; it would not be sufficient to say that an occasional practice of that sort established a custom upon the railroad which was recognized by employes generally and by officials of the railroad company and that such practice might be used in the operation of the defendant's railroad trains. Before you can find in favor of the plaintiff upon that issue, you must find that such custom prevailed generally among the defendant's employes and that it was recognized and established and practiced and used in the operation of the defendant's railroad trains by its employes, and that such custom was recognized and was adopted and acquiesced in by the officials of the defendant company; further, that such custom and practice had been in vogue and had been used long enough to have become established in the operation of the defendant's railroad train."

Upon the receipt of the so-called signal from the engineer of train No. 2 the plaintiff started his train westerly. It was a cold, windy night. The smoke from his engine, and the engine behind, No. 1 being a double header, obstructed and substantially cut off his view along the track. The evidence does not permit a statement of exact distances, but a speed of perhaps 20 miles an hour was developed in the short distance from plaintiff's engine to the point of collision east of the switch. No. 2 was carrying seven or eight coaches and a trailer, a day coach, which had been picked up somewhere west, and the collision was between the plaintiff's engine and the last sleeper of No. 2, which had not cleared for a safe meeting. The plaintiff was moving in the dark, at a goodly speed, unable to see a signal, and did not see his peril in time to avoid a collision.

It was not the duty of the plaintiff to get No. 2 safely on a siding. It was his care not to move his train past the meeting point until No. 2 had safely cleared. It is not clear that rule 17(a) had anything to do with the movements of the plaintiff's train or that it affects defendant's negligence. Nor did the blinking of the headlight, claimed by the plaintiff and denied by the defendant, alto-

gether relieve the plaintiff from a duty under rule 90. There may be doubt whether negligence of the defendant is shown. There may be doubt whether it should not be held that the plaintiff so disobeyed rule 90 or was so negligent that his fault should be said to be the sole proximate cause of the accident within Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. ed. 224; Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. ed. 212; Frese v. C. B. & Q. R. Co. 263 U. S. 1, 44 S. Ct. 1, 68 L. ed. 131; G. N. Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. ed. 732, reversing 125 Minn. 348, 147 N. W. 427. The federal view of course controls on the question of liability. Under our state practice which permits the granting of judgment notwithstanding the verdict, we do not grant judgment unless it is clear that all phases of the case are before us and that nothing more can be presented; otherwise the moving party, if entitled to relief, is given a new trial. 3 Dunnell, Minn. Dig. (2 ed.) § 5082. In our view this is a case for a new trial rather than judgment notwithstanding. On the record as it now stands, controlling negligence of the plaintiff or the freedom of the defendant from negligence should not be pronounced as a matter of law. There should be a new trial.

■ The verdict was for $35,000. It was conditionally reduced to $27,500. The plaintiff was earning $300 a month. He was 67 or 68 years old. We are justified in assuming that his work as an engineer at this class of work would not extend beyond about two years. There is dispute as to the extent of his injuries. The verdict was excessive, and there should be a new trial, rather than a conditional reduction, even if a right of recovery were sustained.

Order reversed and new trial granted.