13927

GILLIS v. ATLANTIC COAST LINE R. CO.

(179 S. E., 62)

*Mr. F. L. Willcox,* for appellant,

*Messrs. Baker & Baker* and *A. F. Woods,* for respondent,

November 2, 1934.

The opinion of the Court was delivered by Mr. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

This is an action on the part of F. P. Gillis, plaintiff, against Atlantic Coast Line Railroad Company, defendant,

under the provisions of the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), for personal injuries alleged to have been sustained while in the discharge of his duties as a trainman. The case was tried before Hon. G. B. Greene, Circuit Judge, and a jury on November 13, 1933, and resulted in a verdict in favor of the plaintiff for the sum of $25,000.00. From this verdict and the judgment entered thereon, the defendant, Atlantic Coast Line Railroad Company, has appealed.

The testimony discloses that the plaintiff, Gillis, was the head brakeman upon a train of the defendant known as No. 212, running extra from Savannah, Ga., to Florence, S. C. As the train approached the Florence yard, orders were given that the train should finally come to rest on what is designated as track No. 16. The train was going north on the main line, and to reach track No. 16 it was necessary to pass a switch and enter track No. 18, designated as a ladder track. Track No. 18 separated into two tracks, one being known as No. 17 and the other as No. 16. The switch to track No. 18, as well as the switch to tracks No. 16 and No. 17, were both on the left side of the engine as it was proceeding; in other words, both switches were on the fireman's side. It was the duty of the plaintiff to see that the switches were properly lined up or set so that the train would finally come to rest on track No. 16, and pursuant to this duty the plaintiff went forward to the engine on the left-hand or fireman's side and then crossed over to the right-hand or engineman's side. Plaintiff claimed that this was necessary in order that he might signal the engineer as to the proper movement of the train. After crossing the switch leading into track No. 18, plaintiff observed that the switch at track No. 17 was set so that the train would come to rest on track No. 17 and not track No. 16 as the orders required. This much of the testimony is admitted by all parties.

It was necessary to change the switch to head the train into track No. 16, and plaintiff testified that he gave the

proper signal for the engineer to stop the train so that said switch might be thrown and that he felt the brakes apply on the engine, indicating that the signal had been observed and was being obeyed. He alighted from the engine on the right front thereof and started across to the left-hand side of the track, where the switch was located controlling the entrance to the track which the train had been ordered into. In some fashion he fell and the engine passed over his right foot, mashing it very severely, and also crushing the great toe on his left foot. It was necessary that a large portion of his right foot be taken off as a result of the injury. The plaintiff further testified that the engine passed about one-half of its length beyond the controlling switch and into track No. 17, indicating that the engine was not under proper control approaching the switch within the yard limits.

There is no exception as to the amount of the verdict.

The defendant appeals upon five exceptions.

The first exception alleges error on the part of the trial Judge in refusing to direct a verdict for the defendant on the ground that the injury to the plaintiff was solely the result of his own negligence in failing to take such "precautions as a person of ordinary prudence and care would, under the circumstances have taken for his safety while engaged on and about a moving locomotive and train and yard tracks."

The second exception complains that the trial Judge should have directed a verdict for the reason that from all of the testimony the sole proximate cause of the plaintiff's injury was his stumbling and falling in front of a moving locomotive and that there was no evidence of negligence on the part of the defendant.

The third exception complains that the trial Judge should have granted a directed verdict on the ground that the plaintiff, with full knowledge of all of the facts, attempted to cross a railroad track in front of the moving locomotive

when the same was in plain view and the speed could have been determined by him while attempting to cross the track.

The fourth exception complains that the trial Judge erred in refusing to direct a verdict on the ground that the plaintiff should have been on the left side of the train instead of the right side in a place of safety, and that by his failure to be on the left side, he selected an unsafe method of performing his duties which resulted in his injury.

The fifth exception complains of error on the part of the trial Judge in refusing defendant's motion for a directed verdict on the ground that the plaintiff had assumed the risk incident to his employment and that his injury was the result of such assumed risk.

It will be seen from the above that although there are five exceptions, there are only three questions in the case and these will be discussed in their order.

Under the Federal Employers' Liability Act, 45 U. S. C. A., § 53, contributory negligence does not bar a recovery by the plaintiff, but the damages are diminished by the jury in proportion to the amount of negligence attributable to such employee. Therefore, under this Act, the question of contributory negligence is peculiarly within the province of the jury.

Several rules were introduced in evidence by the plaintiff, particularly Rules Nos. 979, 980, and 999, which refer to the duty of the engineer or engineman in the movement of trains. Rule No. 979 is as follows: "They must obey signals promptly and if in doubt stop the train. If, in switching, the train or yard man giving signals is lost to view, stop the train until he returns."

Rule No. 980 is as follows: "They will keep a constant lookout on the track, and stop their trains cautiously, and use special care in coupling and shifting cars to avoid damaging equipment, injuring trainmen or annoying passengers."

Rule No. 999 is as follows: "They will render necessary assistance in switching and making up train. While switching, Enginemen and Firemen must remain on engines. They will exercise great care while couplings are being made and give close attention to signals. Engines must be under control when approaching switches which are to be thrown."

Rule No. 1004 is as follows: "They will assist in keeping a lookout on the track, and, if they see any obstruction or signals, must instantly give the Engineman notice. They will be especially observant in rounding curves, approaching highway, running over or through streets in towns and cities, and call attention to any dangerous conditions."

This last rule applies particularly to the fireman who is upon the left-hand side of the engine and is charged particularly with the duty of observing on said left-hand side in giving proper and timely notice to the engineman.

It will be seen from the above that the entire case revolves in some of its aspects around the question as to whether or not Gillis, the plaintiff in this case, gave the proper signal to the engineer to stop the train. If he did, under the rules of the company itself, as well as the rule of common prudence, it would have been the duty of the engineer to have immediately stopped the train. This the engineer failed to do, and although he states in his testimony that no such signal was given, this raised an issue of fact for the jury, and the jury is the sole judge of issues of fact under our system of jurisprudence.

If the engineer failed to obey the signal and thereby disobeyed the rules of the company, as well as the rule of common prudence, this would be negligence on his part, and such negligence would be chargeable to the railroad company. The question as to what was the proximate cause of the injury and the damage resulting therefrom was a question of fact for the jury, and under the testimony of the plaintiff the jury was warranted in finding

that the proximate cause of the injury was the negligence of the defendant.

In addition to the testimony with reference to the disobedience of or failure to see the signal given to the engineer, there was evidence of negligence on the part of the defendant in failing to keep a proper lookout, as required by Rule No. 980, and in failing to have the engine under control when approaching the switch which was to be thrown, as required by Rule No. 999.

This disposes of the first three exceptions of appellant. There was some testimony in the case that the terrain on the left-hand side of the engine was not in perfect condition. The plaintiff, however, claimed that in any event it was necessary for him to be on the right-hand side of the engine so as to give proper signals to the engineer for the movement of the train. If this was a fact, then he was not negligent in being on the right-hand side, for it was his duty to be there. It is a matter of common knowledge that the train is controlled by the engineer and not by the fireman, and that if the plaintiff had been on the left-hand side of the engine the signal would have had to be relayed to the engineer by the fireman, which would have caused considerable delay. In this particular case the time was so short that it is doubtful if the signal could have been relayed to the engineer in time to stop the train before it reached the switch leading into track No. 16.

The last question is with reference to assumption of risk. The correct rule with assumption of risk was fully charged by the Circuit Judge and the jury had the proper measure to weigh the evidence. The employee only assumes all of the ordinary risks of his employment; the extraordinary risks are not assumed by him, nor are those which grow out of the negligence of the employer unless, of course, they are known and appreciated by the employee or are so obvious that a person of ordinary prudence would be presumed to know and appreciate them. He would

not assume the risk of an engineer disobeying a positive signal to stop a train. For that reason, if the jury believed that the plaintiff gave the signal and the engineer failed or refused to obey it, the railroad company was negligent and the doctrine of assumption of risk is not applicable in this cause. This is equally true of other acts of negligence alleged and proven.

There are numerous decisions of the United States Supreme Court in which the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), has been considered with reference to the questions here involved. The principles which are applicable to the case at bar are best illustrated, however, by several late decisions in which the Court clearly sets forth the proper rule with reference to negligence, contributory negligence, and assumption of risk.

The distinction between contributory negligence and assumption of risk is a very marked one under the Act. A full discussion of this matter is found in the case of *Chesapeake & Ohio Railroad Co. v. De Atley,* 159 Ky., 687, 167 S. W., 933; *Id.,* 241 U. S., 310, 36 S. Ct., 564, 566, 60 L. Ed., 1016. The rule as to assumption of risk is correctly stated in this case where the following language is used: "According to our decisions the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

The case of *Reed v. Director General of Railroads,* 258 U. S., 92, 42 S. Ct., 191, 192, 66 L. Ed., 480, where the decedent was a member of a train crew which brought a train from Philadelphia to South Bethlehem, is very much

in point. In that case the question was whether the deceased was killed as a result of the negligence of the deceased, or whether by reason of the negligence of the engineer in failing to notice or heed the signaling of the deceased at or near a derailing device on the tracks. In any event, the locomotive did not stop in time and the caboose was derailed as a result thereof, and the deceased was crushed to death between it and the cars on an adjoining track. The plaintiff was awarded a verdict in the lower Court. In speaking of this matter where the Court reversed a judgment in favor of the defendant by the Pennsylvania Supreme Court (267 Pa., 86, 110 A., 254), on appeal, the United States Supreme Court, Mr. Justice McReynolds delivering the opinion, uses the following language: "In actions under the Federal Act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad while engaging in interstate commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers."

The case of *Rocco, Executrix, v. Lehigh Valley Railroad Co.*, 288 U. S., 275, 53 S. Ct., 343, 77 L. Ed., 743, also enters into a discussion of the question of assumption of risk and contributory negligence. In this case the judgment of the Court of Appeals of New York (259 N. Y., 51, 181 N. E., 11), dismissing the case was reversed by the United States Supreme Court.

The case of *Chicago, Rock Island & Pacific Railway Co. et al. v. Ward*, 252 U. S., 18, 40 S. Ct., 275, 276, 64 L. Ed., 430, is illustrative of the difference between assumption of risk and contributory negligence. In this case Ward was a switchman and received certain injuries while in the line

of his employment with the railroad. Ward alleged that the method of cutting certain cars loose from the engine was negligent. The testimony tended to show that the engine foreman failed to properly cut off the cars at the time he directed the engineer to retard the speed of the engine, thereby causing them to slow down in such manner that when the check reached the car upon which Ward was about to set the brake, he was suddenly thrown from the top of the car with the resulting injuries for which he brought action. The Court, in discussing the matter, Mr. Justice Day speaking, affirms the judgment of the Supreme Court of Oklahoma (68 Okl., 201, 173 P., 212), sustaining the plaintiff's verdict, and says, in part: "In the absence of notice to the contrary, and the record shows none, Ward had the right to act upon the belief that the usual method would be followed and the cars cut off at the proper time by the engine foreman so that he might safely proceed to perform his duty as a switchman by setting the brake to check the cars which should have been detached. For the lack of proper care, on the part of the representative of the railway company while Ward was in the performance of his duty, he was suddenly precipitated from the front end of the car by the abrupt checking resulting from the failure to make the disconnection. This situation did not make the doctrine of assumed risk a defense to an action for damages because of the negligent manner of operation which resulted in Ward's injury, and the part of the charge complained of though inaccurate could have worked no harm to the petitioners. It was a sudden emergency, brought about by the negligent operation of that particular cut of cars, and not a condition of danger, resulting from the master's or his representatives' negilgence, so obvious that an ordinarily prudent person in the situation in which Ward was placed, had opportunity to know and appreciate it, and thereby assume the risk."

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

NOTE.—This opinion is substituted for an opinion in this case heretofore filed on the 24th day of October, 1934; that opinion being withdrawn from the files of the Supreme Court.