## KENT B. JACOBSON v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

April 5, 1946.

No. 34,145.

[1]Reported in 22 N. W. (2d) 455.

*Alfred E. Rietz, Wilson & Blethen,* and *Nye F. Morehouse,* for appellant.

*Davis, Michel, Yaeger & McGinley,* and *A. R. Pfau, III,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues under the federal employers liability act, 45 USCA, § 51, *et seq.,* to recover for personal injuries alleged to have been caused by the negligence of defendant. There was a verdict for plaintiff. Defendant appeals.

Plaintiff was employed by defendant as a brakeman. At the time of the injury he was engaged in an interstate commerce switching operation in defendant's yards in Chicago. Together with other members of a switching crew (an engineer, a fireman, and another brakeman), plaintiff was engaged in moving four cars from a track extending north and south to a spur track running northwest to a coalyard. The cars were standing on the north-and-south track a short distance north of its junction with the spur track. The locomotive was coupled to the most southerly of the four cars, facing them. The engineer sat on the east side of the cab (his right, facing toward the front of the locomotive) and the fireman on the west side. The intended movement was to pull the cars southerly beyond the spur-track switch and, after throwing the switch, to back the cars onto the spur track and thence to the coalyard. After

the movement started, plaintiff got on the car nearest the locomotive to release the brakes, because a "squealing" noise indicated that they were set.

According to plaintiff's version, when he was "about opposite the switch" he gave a signal to stop to the fireman, who was looking directly at him; that the train then was moving at a speed of about two miles per hour and could have been stopped, as he testified, "on what we call a dime, about a foot"; that after giving the signal he got around on the side of the car on the stepladder preparatory to getting off at the switch; that the train did not stop; and that the first thing he knew he was caught between the side of the car and a building projection, about 25 feet south of the switch, which was so close to the track as not to permit clearance for a man on the side of a car. As a result of being caught in that situation, plaintiff was rolled between the side of the car and the building for a distance of about 30 feet, causing him very severe personal injuries. Where the switch was located was a safe place to alight from the train. On the north side of the building projection defendant had posted a prominent sign, of which plaintiff had actual knowledge, that there was "no clearance" for a man on the side of a car.

Defendant's version admits that the train was moving and that plaintiff released the brakes as he claimed, but denies that plaintiff gave the signal to stop and that the train could have been stopped in so short a distance. The fireman testified that plaintiff gave no signal to stop, but that he saw plaintiff, when he was about 10 or 15 feet from the building projection, and that he then gave the engineer a signal to stop. The engineer testified that the train could have been stopped in about 15 or 20 feet and that he did stop it upon getting the signal to stop from the fireman.

The testimony showed that rules had been adopted for train movements in connection with switching operations; that, among other things, according to the rules, it was the duty of the engineer to start and to stop on signal from the brakemen; and that, when a brakeman was so placed that he could not give a signal to the

engineer, the signal was to be given to the fireman and by him passed to the engineer.

Defendant's numerous assignments of error may be reduced to the following contentions: (1) Defendant was not guilty of negligence; (2) plaintiff's contributory negligence was the sole proximate cause of the accident; (3) the charge was erroneous; and (4) the verdict was excessive. Such further statement of the facts as is necessary will be made in connection with these contentions.

■ Under § 51 of the federal employers liability act, a railroad is liable to an employe engaged in interstate commerce for injury resulting in whole or in part from the negligence of its officers, agents, or employes. Here, the employe was engaged in interstate commerce at the time of injury, and the question is whether his injuries resulted from the negligence of defendant's employes, as he claims. To establish negligence, plaintiff showed that he was injured as a result of the failure to stop the train in response to his signal, as it was the duty of those in charge thereof to do under the rules adopted by defendant regulating switching operations in its yards. Rules and regulations governing the conduct of those employed in a business as complex and dangerous as switching operations in railroad yards are necessary to facilitate carrying on the business and to protect those employed therein. See, Scott v. Eastern Ry. Co. 90 Minn. 135, 95 N. W. 892; Wallin v. Eastern Ry. Co. 83 Minn. 149, 86 N. W. 76, 54 L. R. A. 481. The adoption of rules "admits the reasonable necessity for the conduct thereby prescribed." Topore v. Boston & Main Railroad, 78 N. H. 536, 537, 103 A. 72, 73. Specific directions made part of rules constitute standards of care, presumably demanded by the exigencies of the business, to which all persons employed in the business are required to conform; and, because the employer ordinarily will discharge his duty of enforcing such rules and other employes presumptively will obey them, an employe reasonably may rely on observance of the rules by other employes until the contrary appears. Arveson v. Boston Coal Dock & Wharf Co. 128 Minn. 178, 150 N. W. 810; Anderson v. Pittsburgh Coal Co. 108 Minn. 455, 122 N. W. 794,

26 L.R.A.(N.S.) 624; Glines v. Oliver I. Min. Co. 108 Minn. 278, 122 N. W. 161; 3 Labatt, Master and Servant (2 ed.) § 1114. As said in Wood v. N. Y. C. & H. R. R. Co. 70 N. Y. 195, 200:

"* * * These rules are made for the guidance of the employees, and are presumed to embody the views of the company, the observance of which it regards as essential to the safe and proper conduct of the business, and if in a given case it could be shown that an injury occurred by reason of such violation, the presumption of negligence would be strong, and in some cases decisive. In some sense the judgment of the company as to the character of the act would, in this way be obtained, and it is a species of evidence to which the company ought not to object. It is a mistake to suppose that only the company and its employees are concerned in these instructions. The public are interested in having the best possible rules prescribed, and in having them observed and obeyed."

Where harm is caused to an employe by violating a rule adopted to secure safe conduct of the work, a finding of negligence is justified. Tennant v. Peoria & Pekin Union Ry. Co. 321 U. S. 29, 64 S. Ct. 409, 88 L. ed. 520; Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 63 S. Ct. 444, 87 L. ed. 610, 143 A. L. R. 967; Carlson v. Payne, 150 Minn. 480, 186 N. W. 291.[2] Hence, a showing that harm was caused to an employe by failure to stop in response to a signal so to do supports a finding of negligence. Case v. St. Louis-San Francisco Ry. Co. (Mo.) 30 S. W. (2d) 1069 (*certiorari* denied, 282 U. S. 893, 51 S. Ct. 107, 75 L. ed. 787); Gillis v. Atlantic Coast Line R. Co. 175 S. C. 223, 179 S. E. 62 (*certiorari* denied, 294 U. S. 718, 55 S. Ct. 545, 79 L. ed. 1251).[3] Here, plaintiff showed that he gave a

[2]To the same effect: Manning v. C. G. W. R. Co. 179 Minn. 411, 229 N. W. 566; Thayer v. Hines, 145 Minn. 240, 176 N. W. 752; Sheehy v. M. & St. L. R. Co. 126 Minn. 133, 147 N. W. 964; Byrne v. G. N. Ry. Co. 111 Minn. 198, 126 N. W. 627; Clay v. C. M. & St. P. Ry. Co. 104 Minn. 1, 115 N. W. 949; Manwaring v. Drake-Stratton Co. 93 Minn. 497, 101 N. W. 1134, 102 N. W. 1134; Roe v. Winston, 86 Minn. 77, 90 N. W. 122.

[3]The cited cases arose under the federal employers liability act. Cases decided prior to its enactment are in accord. Steele v. Central Railroad of Iowa, 43 Iowa 109; Nichols v. C. R. I. & P. Ry. Co. 69 Iowa 154, 28 N. W.

signal to stop; that, relying on the fact that the fireman, as was his duty, would transmit the signal to the engineer and that the engineer would stop the train, he took a position on the side of the car preparatory to getting off at the switch; that the fireman should have known that plaintiff was in a safe position if the stop were made, but not if the train kept going until it reached the building projection, where there was insufficient clearance; and that the train could have been stopped before reaching the place of danger, but was not. According to plaintiff's testimony, he gave the signal to stop before the train reached the switch, which was at least 25 feet from the building projection and which, in our judgment, was sufficient to enable the engineer to stop, because, according to his version, he could have stopped in 15 or 20 feet and, according to plaintiff's, in about a foot. The situation was one where defendant's employes knew that disobedience of the rule to stop on signal would cause harm to plaintiff, and, with such knowledge, they disobeyed the rule.

■ Defendant contends that the finding, implicit in the verdict, that plaintiff signaled for a stop is against the weight of the evidence. Its argument is that, so far as the direct evidence is concerned, plaintiff's testimony that he gave the signal is contradicted by the fireman's that he did not; and that, in addition, plaintiff's story is unbelievable because it was not customary to stop to enable brakemen to get off when a train was going at a speed of two miles per hour, as claimed by plaintiff. Plaintiff's testimony that he gave the signal is positive and emphatic. The credibility of the fireman was severely shaken by a display of overeagerness in favor of defendant, which according to the evidence might have been accounted for by the fact that he either did not promptly pass the signal to the engineer or, because of the fact that he had a cigar in his mouth, did so in such a manner that the engineer could not readily understand it. In that situation, a fact issue was presented as to which version was the true one. Where the evidence

571. In Howard v. Delaware & H. Canal Co. (C. C.) 40 F. 195, failure to slow down in response to a signal was held to be negligence.

whether a defendant or its employes were guilty of negligence is in conflict, the question of negligence is one for the jury. Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410 (*certiorari* denied, 323 U. S. 752, 65 S. Ct. 87, 89 L. ed. 602); Blair v. B. & O. R. Co. 323 U. S. 600, 65 S. Ct. 545, 89 L. ed. 490; Bailey v. Central Vermont Ry. Inc. 319 U. S. 350, 63 S. Ct. 1062, 87 L. ed. 1444. The instant case is no exception to the rule. Similar conflicts in the evidence arising under similar circumstances have been held to raise only fact issues for the determination of the jury. Carlson v. Payne, 150 Minn. 480, 186 N. W. 291; Byrne v. G. N. Ry. Co. 111 Minn. 198, 126 N. W. 627; Gillis v. Atlantic Coast Line R. Co. 175 S. C. 223, 179 S. E. 62 (*certiorari* denied, 294 U. S. 718, 55 S. Ct. 545, 79 L. ed. 1251); Flannery v. New York, O. & W. R. Co. (2 Cir.) 29 F. (2d) 18; see, Benson v. Northland Transp. Co. 200 Minn. 445, 274 N. W. 532.

In determining whether plaintiff was guilty of contributory negligence and whether, as defendant claims, his contributory negligence was the sole proximate cause of the accident, it is our plain duty to lay out of mind any question of whether he was guilty of assumption of risk, because that defense was entirely obliterated by the 1939 amendment of the act. Crawford v. D. M. & I. R. Ry. 220 Minn. 225, 19 N. W. (2d) 384. The defense of assumption of risk is not to be let in under the label of contributory negligence. Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 63 S. Ct. 444, 88 L. ed. 610, 143 A. L. R. 967, *supra*. See, Maloney v. Cunard Steamship Co. Ltd. 217 N. Y. 278, 111 N. E. 835. Under the federal employers liability act, an injured employe cannot recover where his contributory negligence is the sole proximate cause of the accident. Atlantic Coast Line R. Co. v. Driggers, 279 U. S. 787, 49 S. Ct. 490, 73 L. ed. 957; 35 Am. Jur., Master and Servant, § 406, note 12. And where the injured employe is guilty of contributory negligence, but such contributory negligence is not the sole proximate cause of his injuries, contributory negligence has the effect under the act only of diminishing the amount of the recovery in proportion to the amount of negligence attributable to him. McLain v. C. G.

W. R. Co. 140 Minn. 35, 167 N. E. 349, 12 A. L. R. 688. We held in Hitchcock v. Railway Transfer Co. 81 Minn. 352, 84 N. W. 42, that it was contributory negligence as a matter of law for a switchman voluntarily to ride on the side of a car where, as here, he knew there was insufficient clearance; but we did not decide whether such contributory negligence was the sole proximate cause of the accident. In the instant case, plaintiff testified that he had no intention of riding past the switch, which was equivalent to saying that he did not intend to ride where there was insufficient clearance; and that he was carried involuntarily to that point because of the failure to stop on his signal. Hence, the question whether he was guilty of contributory negligence at all was one of fact, as was the further question whether contributory negligence, if any, was a proximate cause or the sole proximate cause of the accident. The evidence sustains a finding in plaintiff's favor that he was not guilty of contributory negligence, and that, if he was, it was not the sole proximate cause of the accident.

■ The only assignment of error concerning the charge meriting discussion relates to a statement twice repeated, that it was defendant's duty to provide plaintiff with a safe place to work. The jury was not informed in what respect this part of the charge was applicable or that plaintiff could recover for a breach of that duty. The charge was correct as an abstract proposition of law. Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410, 419 (*certiorari* denied, 323 U. S. 752, 65 S. Ct. 87, 89 L. ed. 602); Bailey v. Central Vermont Ry. Inc. 319 U. S. 350, 63 S. Ct. 1062, 87 L. ed. 1444. The charge explicitly informed the jury that plaintiff could recover only if defendant was negligent in the respects hereinbefore discussed, and in that connection the application of the rules of law to the facts of the case was fully explained. In our opinion, the charge limited plaintiff's right to recover to the rules applicable to the facts of the case. The abstract statement that it was defendant's duty to provide plaintiff a safe place to work could not have affected the result. While there was no valid reason for giving the charge, it also is true that the giving of it does not con-

stitute a valid reason for a reversal, for the plain reason that it was harmless under the circumstances. An instruction on an abstract proposition of law not pertinent to the case and not calculated to mislead the jury is no ground for a new trial. Blackman v. Wheaton, 13 Minn. 299 (326).

The verdict for $20,000 is challenged as excessive, but it is not shown in what respects, if any, this is true. Plaintiff's injuries were aggravated and severe. A large verdict was warranted. Since it has not been shown why the verdict is excessive, we will not disturb it. The burden of showing error is on the appellant, and where, as here, he fails to sustain the burden, decision must go against him. Error is never presumed; it must be made to appear affirmatively. 1 Dunnell, Dig. & Supp. § 368.

Affirmed.

Mr. Justice Christianson took no part in the consideration or decision of this case.

